USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1808 MARK J. PORTER, Plaintiff, Appellant, v. BANGOR & AROOSTOOK RAILROAD COMPANY, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich and Coffin, Senior Circuit Judges. _____________________ ____________________ James F. Freeley, III with whom James F. Freeley, Jr. and Freeley _____________________ ______________________ _______ & Freeley were on brief for appellant. _________ Jeffrey T. Edwards with whom Elizabeth J. Wyman and Preti, ___________________ ____________________ ______ Flaherty, Beliveau & Pachios were on brief for appellee. ____________________________ ____________________ February 9, 1996 ____________________ ALDRICH, Senior Circuit Judge. Mark J. Porter, an ____________________ experienced brakeman employed by defendant Bangor & Aroostook Railroad Co., injured his back on October 1, 1992, while adjusting a rusty car coupler device that had previously failed to couple automatically with another car. He seeks recovery under the Federal Safety Appliance Act (FSAA), 45 U.S.C. 2,1 a statute that has been ruled to impose liability without fault, San Antonio & Aransas Pass Railway ___________________________________ Company v. Wagner, 241 U.S. 476 (1916), when a violation _______ ______ contributed in any degree to an employee's injuries. Carter ______ v. Atlantic & St. Andrews Bay Ry. Co., 338 U.S. 430, 434-35 ___________________________________ (1949). Alternatively, he asserts injury due to negligently defective equipment, a typical Federal Employers Liability Act (FELA), 45 U.S.C. 51, claim. In response to special questions the jury found that defendant had violated the FSAA but that the failure was not a cause of plaintiff's injury. With respect to the FELA it found that defendant had not been negligent. After denial of plaintiff's motion for new trial on the two issues decided unfavorably, the court entered judgment for defendant. Plaintiff appeals. We affirm.  ____________________ 1. "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car . . . not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 45 U.S.C. 2 (1893) (repealed 1994) (current version at 49 U.S.C. 20302). -2- Plaintiff's appeal is devoted principally to the FSAA action where he faces the substantial obstacle of a jury finding of no causal connection between the violation and the injury. Recognizing this burden, he takes the bull by the horns and argues that, the violation and injury having been established, the jury not merely should have found, but was required to find a causal connection between them as matter of law. Plaintiff's contention takes two forms. First, he says the jury's finding that defendant violated the FSAA means that the coupling equipment was defective. Thus plaintiff strained his back working on defective coupler equipment; hence he was within the statute. We do not agree. There is nothing especially dangerous in coupling devices themselves, the statutory reach is the coupling maneuver. As the Court said in the early case of Johnson v. Southern _______ ________ Pacific Co., 196 U.S. 1, 19 (1904), "The risk in coupling and ___________ uncoupling was the evil sought to be remedied . . . ." Although plaintiff speaks about having to go between the ends of the cars, it was not for coupling, but in preparation for coupling. One must go behind, viz., between the cars, to align the drawbars before commencing the coupling operation2. If, as here, the cars are safely separated and  ____________________ 2. Plaintiff himself testified that the drawbars can swing, and must sometimes be lined up in order to meet, a procedure he performed routinely every day. See Goedel v. Norfolk & ___ ______ _________ -3- not in motion, readying is not coupling, and does not involve the special coupling risks. What could be the reason, or purpose, for requiring special protection for this isolated activity? It is true that other circuits appear to have read the FSAA more broadly, see Clark v. Kentucky & Indiana ___ _____ ____________________ Terminal Railroad, 728 F.2d 307 (6th Cir. 1984) (collecting _________________ cases),3 but they give no answer to our question. We can think of none. Plaintiff had no FSAA case. Alternatively, plaintiff would find a special circumstance in the fact that his act of preparation was due to, and hence the product of, a proven coupling violation. According to his brief, The undisputed material facts demonstrate that plaintiff sustained a back injury as a direct and natural consequence of the defendant's violation of section 2 of the FSAA. . . . . . The only reason that the plaintiff went between the tank car and the hopper car to realign the drawbar on the two cars was because there had been a failed coupling. . . . . . There is causation as a matter of law. . . . Clearly, but for the failed  ____________________ Western Railway Co., 13 F.3d 807, 809 (4th Cir. 1994). ___________________ 3. In Kavorkian v. CSX Transportation, Inc., 33 F.3d 570 _________ _________________________ (6th Cir. 1994), the court assumed the correctness of precisely our plaintiff's case for the purpose of granting a new trial. -4- coupling, plaintiff never would have gone between the two cars . . . . "But for" the previously failed coupling plaintiff would not have been hurt. Post hoc, ergo propter hoc (Following this, __________________________ hence because of this), is poor logic.4 Plaintiff would have our holding that a preparatory procedure falls under the FELA change automatically to the FSAA (no need to prove negligence) if the procedure was undertaken because of a previous failure to couple in violation of that act. This would be but a lottery, and purposeless. It is unacceptable. This is not to say, of course, that plaintiff was unprotected during the drawbar adjustment; he had his ordinary FELA rights. The difficulty here is that the jury found no negligence. Plaintiff's only complaint on appeal on his negligence count is the court's failure to give a request that assumption of risk was not a defense. Defendant had not claimed assumption of risk, but only the partial defense of contributory negligence. The instructions here were correct. It is true that the two principles can be confused, but we readily accept the court's conclusion that it would only add confusion to "set up . . . [a] straw tiger and then knock it down." Affirmed. _________  ____________________ 4. See, e.g., Webster's Dictionary, Unabr. 2d ed. 1953. -5-